UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TRAVELERS INDEMNITY COMPANY, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) No. 4:06-CV-824 (CEJ) ) |
| AMERICAN HOME ASSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on cross motions for summary judgment filed by plaintiffs and defendant. Each party has responded, and the issues are fully briefed.

Plaintiffs Travelers Indemnity Company and TIG Insurance Company bring this equitable contribution action against defendant American Home Assurance Company, asserting that defendant should have funded a settlement to resolve underlying litigation in which their insureds were defendants. Plaintiffs allege that defendant was required to fully fund the prior settlement, and they seek contribution in full for the settlement amount. Additionally, plaintiffs seek costs and attorney's fees incurred in the underlying litigation. Finally, plaintiffs ask for statutory penalties for vexatious refusal to pay, in accordance with Mo. Rev. Stat. §375.420, along with interest, attorney's fees, and costs associated with the instant action. Although plaintiffs initially filed this action in the Circuit Court of the City of St. Louis,

defendant removed it to this Court on the basis of diversity of citizenship jurisdiction.[1]

I. **Background**

A. <u>The Kuehn Litigation</u>

The settlement from which plaintiffs are seeking equitable contribution resulted from the matter of <u>Thomas Kuehn, et al. v. Richard Anderson, II, et al.,</u> filed in the Circuit Court of the City of St. Louis. In that case, the plaintiffs alleged that they were assaulted by Richard Anderson, II. and Richard Anderson, III., while attending a St. Louis Rams professional football game in November 2001. The Andersons were season ticket holders with tickets to the same seats for every game. The games were held in what is now known as the Edward Jones Dome. The petition alleged that other season ticket holders seated near the Andersons soon began to tire of the Andersons' unruly and intoxicated behavior. Even though the Andersons' behavior could have, under the Fan Conduct Policy then in place, resulted in their ejection from the football games, the Andersons were simply relocated to different seats.

The Andersons' new seats were close to the seats occupied by the plaintiffs during a November 26, 2001 game. During that game, the plaintiffs were walking to their seats while the Andersons, appearing intoxicated, proceeded down the aisle towards them. The

---

[1]The amount of the settlement in the underlying case is confidential and is disclosed only in sealed documents. The settlement amount does, however, exceed the $75,000 amount in controversy threshold. <u>See</u> 28 U.S.C. §1332.

Andersons then assaulted the plaintiffs causing them severe injuries.

The plaintiffs brought suit against the Andersons, the Rams, the Dome, and Gateway Sportservice, the company licensed to provide alcohol and other concessions during the game.[2] The claims in Count I through Count VIII of the petition were primarily directed toward the Andersons and are not relevant in this matter. Count IX asserted a negligence claim against the Rams and the Dome, alleging that they were aware of the dangerous condition created by the Andersons' demeanor and should have taken action to prevent a foreseeable assault. Count X asserted a claim of negligence against the Rams, the Dome, and Sportservice, contending that their service or sale of alcohol to the Andersons while they were visibly intoxicated contributed to the dangerous condition.

The Rams were insured through Gulf Insurance Company, which has since merged with plaintiff Traveler's Indemnity. The Dome was insured through plaintiff TIG, while Sportservice carried insurance through defendant American Home.

During settlement negotiations, Sportservice reached a settlement with the plaintiffs to resolve Count X in its entirety as to all defendants. As Sportservice's insurer, defendant American Home funded the settlement of Count X. Subsequently,

---

[2] For purposes of this motion, "the Rams" refers to both ITB Football Company, LLC, and The Rams Football Company, Inc. Likewise, "the Dome" refers to several different entities including the St. Louis Regional Convention and Sports Complex Authority, the Regional Convention and Visitors' Commission and St. Louis America's Center-Edward Jones Dome.

plaintiffs Travelers Indemnity and TIG, on behalf of their respective insureds the Rams and the Dome, entered into a settlement to resolve Count IX. Defendant American Home did not fund any portion of the latter settlement. Plaintiffs now bring this action seeking reimbursement from defendant for the entire amount paid to settle Count IX of the Kuehn petition, contending that defendant's insured, Sportservice, had agreed to indemnify the Rams and the Dome for the actions alleged therein.

### B. The Concession License Agreement

The indemnification clause between Sportservice and the Rams and the Dome is contained in the Concession License Agreement made between the parties. The Concession License Agreement gave Sportservice exclusive concession rights, including the sale and service of alcoholic beverages, for St. Louis Rams' home football games and other events held at the Dome. Article VII of the agreement, provides, in pertinent part:

**7.2 Indemnification**

**(a) [Sportservice] shall indemnify, defend, and hold harmless [the Rams and the Dome]...from and against all claims...arising out of or in connection with the acts, errors, omissions, conduct or operations of [Sportservice], provided that any such claim...(1)is caused...in whole or in part, by any negligent act, error, omission, conduct or operation of [Sportservice]; or (2) is caused or is claimed to have been caused, in whole or in part, by any food, beverage, or product sold or service rendered by [Sportservice]; or (3) is attributable to or claimed to be casued, in whole or in part, by the use of alcoholic beverages sold or served by [Sportservice].**

**(b) [The Dome] shall indemnify, defend, and hold harmless [Sportservice]...from and against all**

-4-

claims...arising out of or in connection with...the acts, errors, omissions, conduct or operations of [the Dome]...to the extent that such damage, loss or expenses is caused or is claimed or alleged to have been caused...by any negligent act, error, omission, conduct, or operation of [the Dome].

(c) The Rams shall indemnify, defend, and hold harmless [Sportservice]...from and against all claims...arising out of or in connection with...the acts, errors, omissions, conduct or operations of the Rams...to the extent that such damage, loss or expense is caused or is claimed or alleged to have been caused...by any negligent act, error, omission, conduct, or operation of the Rams.

The Concession License Agreement also contains a requirement that Sportservice acquire and maintain certain types of insurance:

**7.3 Licensee's Insurance**

(a) [Sportservice] shall provide and maintain...the **following kinds and minimum amounts of insurance, and with such deductibles as are usual and customary or otherwise reasonable for such coverages for concession operations:**
    1. Workers' Compensation...
    2. Commercial General Liability Coverage...
    3. Commercial Automobile Liability Insurance...
    4. Umbrella or Excess Liability...
    5. Personal Property Insurance...
    6. Blanket Employee Dishonesty...

(b)...**The policies shall also provide that [the Dome and the Rams] shall be additional insureds except for the coverages applicable to workers' compensation, commercial automobile and blanket employee dishonesty.**

(c)...**The foregoing insurance policy or policies shall:**
    A. **apply as primary insurance on behalf of [the Dome and the Rams], regardless of what insurance or self-insurance [the Dome and the Rams] may maintain; and**
    B. **include a "cross liability" (severability of interests) clause.**

**C. Defendant American Home Assurance's Policy**

Sportservice maintained commercial general liability insurance issued by defendant American Home. "Coverage A" of the policy provided general liability coverage for bodily injuries but specifically excluded claims for which Sportservice was obligated to pay damages through the assumption of liability in a contract. The policy did, however, contain an exception to this contractual liability exclusion, which read:

> **This exclusion does not apply to liability for damages...**
>
> **(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement...**

The policy defined "insured contract" as "that part of any other contract or agreement pertaining to your business...under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." The policy explained that "tort liability means a liability that would be imposed by law in the absence of any contract or agreement."

**II. Legal Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. <u>Agristor Leasing v. Farrow</u>, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986); <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-587 (1986); Fed. R. Civ. P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corporation v. Citrate</u>, 477 U.S. 317, 322 (1986).

**III. Discussion**

The facts relevant to this matter are not in dispute. Instead, the parties disagree on the interpretation of various provisions in defendant's insurance policy and the Concession License Agreement. Because there is no genuine issue of material

fact, the Court agrees that this matter is an appropriate one for summary judgment.

Plaintiffs argue that defendant is obligated to fund the settlement of Count IX for two reasons. First, plaintiffs contend that the Concession License Agreement, where Sportservice allegedly assumed the tort liabilities of the Rams and the Dome, constitutes an "insured contract" under defendant's policy. Second, plaintiffs allege that the Rams and the Dome are "additional insureds" under several endorsements to defendant's policy.

Defendant acknowledges that the Rams and the Dome were covered under its policy, but insists that their coverage was limited to liability arising out of Sportservice's concession operations. Defendant contends that Count IX of the <u>Kuehn</u> petition seeks damages resulting from the negligence of the Dome and the Rams, and not from Sportservice's operations or negligence. Defendant argues that only Count X of the petition, which was settled by defendant as to all parties, asserted liability resulting from Sportservice's operations. Therefore, defendant contends that it has no obligation to fund the settlement for any other portion of the <u>Kuehn</u> petition.

Because the settlement at issue in this matter resolved Count IX of the <u>Kuehn</u> petition, the Court will begin with a brief examination of that Count. Count IX alleged that the Rams and the Dome had a special duty to assure their ticket holders a safe environment. The <u>Kuehn</u> plaintiffs alleged that the Rams and the Dome were aware of a dangerous condition, i.e., the Andersons'

-8-

"hooliganism, alcohol intoxication, confrontation and violence", yet failed to take any action to protect other ticket holders from the Andersons' violent behavior. Specifically, the plaintiffs claimed that the Rams and the Dome were negligent in failing to eject the Andersons pursuant to the Fan Conduct Policy. Sportservice is not named as a defendant in Count IX.

The Court finds that the claim in Count IX is directed to the negligence of the Rams and the Dome and not to any negligence or concession operations of Sportservice. Indeed, plaintiff Traveler's Indemnity admits that the settlement for which they are seeking contribution (which resolved Count IX) resolved claims relating to the Rams' own negligence and not the negligence or operations of Sportservice. (See Exhibit 4, Plaintiff Travelers Indemnity Company's Responses to Defendant's Request for Admissions). Further, it is relevant that the Kuehn plaintiffs did not name Sportservice as a defendant in Count IX. Count IX simply alleges that the Rams and the Dome were negligent in failing to provide a safe atmosphere for their invitees. Therefore, Sportservice is not liable for the claims in Count IX unless it agreed to indemnify the Rams and the Dome against their own negligence.

"Whether an indemnity agreement is relevant and controls the obligations of the insurers depends on the facts and circumstances of the particular case." Federal Ins. Co. v. Gulf Ins. Co., 162 S.W.3d 160, 166 (Mo. App. E.D. 2005). Therefore, a court should "begin [its] analysis with the language of the indemnity

provisions." Wal-Mart Stores, Inc. v. RLI Ins. Co., 292 F.3d 583, 587 (8th Cir. 2002). The indemnity clause in this matter is contained in the Concession Licensing Agreement.

The parties have highlighted two portions of the Concession Licensing Agreement, both contained under Article VII. The first portion, provision 7.2, is the indemnification clause itself, which clearly provides that Sportservice would indemnify the Rams and the Dome against all claims arising out of Sportservice's conduct when such claims were caused, in whole or in part, by one of the following: (1) Sportservice's negligent conduct; (2) any food, beverage or product sold or serviced by Sportservice; or (3) the use of alcoholic beverages sold or served by Sportservice. The Rams and the Dome, in turn, promised to indemnify and defend Sportservice against all claims caused by their own negligent conduct.

The second relevant portion identified by the parties is provision 7.3, which calls for Sportservice to maintain certain kinds of insurance, including Commercial General Liability Coverage with "deductibles as are usual and customary...for concession operations." The policies were required to name the Rams and the Dome as additional insureds and were to apply as primary insurance on their behalf, "regardless of what insurance or self-insurance [they] may maintain.

Plaintiff contends that provision 7.3 creates an obligation for Sportservice to provide and maintain liability coverage for the Rams and the Dome, even for claims based upon their own negligence.

-10-

Defendant argues that this interpretation is inconsistent with the mutual indemnification provisions contained in provision 7.2, where the Rams and the Dome each promised to indemnify Sportservice for their own negligent acts.  Defendant asserts that, in order to be consistent with the mutual indemnity obligations under provision 7.2, the insurance requirement under provision 7.3 must be read to require Sportservice to maintain insurance coverage for the Rams and the Dome only for those claims relating to Sportservice's operations.

Under Missouri law, a party may "agree to indemnify the [indemnitee] against the results of the indemnitee's own negligence." Nusbaum v. City of Kansas City, 100 S.W.3d 101, 105 (Mo. banc 2003).  However, a contract for indemnity will not be construed to do so "unless such intention is expressed in clear and unequivocal terms."  Id.

The assertion that Sportservice agreed to indemnify the Rams and the Dome for claims resulting from their own negligence is inconsistent with the clear language of the contract.  Provision 7.2 unambiguously states that the Rams and the Dome would indemnify Sportservice for claims resulting from their own negligent conduct.  Sportservice agreed only to hold the Rams and the Dome harmless for claims resulting from Sportservice's negligent act or concession operations.  The clear language of the contract precludes any alternative interpretation.

Provision 7.3 of the agreement, requiring Sportservice to acquire insurance covering the Rams and the Dome, must be construed

to be consistent with the clear language of the indemnification provision. See <u>SD Investments, Inc. v. Michael-Paul, L.L.C.</u>, 90 S.W.3d 75, 81 (Mo. App. W.D. 2002)("Each term and clause is construed to avoid an effect that renders other terms and provisions meaningless.").

In the Court's view, provision 7.3 merely requires Sportservice to obtain insurance covering that liability for which it agreed to indemnify, i.e., their concession operations. Indeed, the language contained in subsection (a) explicitly refers to "coverages for concession operations." The simple requirement that Sportservice name the Dome and the Rams as additional insureds on those policies does not necessarily indicate that the parties intended to extend or broaden coverage to any and all negligent conduct of the Dome or the Rams. See <u>Kansas City Power & Light Co. v. Federal Const.Corp.</u>, 351 S.W.2d 741, 747-49 (Mo. 1961). Because the contract clearly provides that the Rams and the Dome would indemnify, defend, and hold Sportservice harmless for their own negligence, "the requirement of insurance cannot be considered as evidencing an intent to broaden generally the contract language, or to extend it to cover the negligence of [the Rams and the Dome]." <u>Id.</u> at 747. Since the Rams and the Dome agreed to indemnify Sportservice for their own negligent acts, the Court finds that Sportservice did not contractually obligate itself to pay damages for claims alleged in Count IX.

Defendant's policy covers contractual liability assumed by Sportservice in an "insured contract". Because Sportservice has no

contractual liability for the claims in Count IX, the "insured contract" provision is not applicable. However, even assuming that Sportservice was liable for the negligence of the Rams and the Dome through its promise to maintain liability insurance, such an agreement still would not constitute an "insured contract" under defendant's policy. As set forth in defendant's policy,

>  **An "insured contract" means:**
>
> ***That part*** **of any other contract or agreement pertaining to your business...under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.**

(emphasis added).

Thus, as defined in the policy, an "insured contract" does not necessarily refer to an entire agreement, but only "that part" where the insured assumes the tort liability of another.

The portion of the Concession License Agreement where Sportservice agreed to procure insurance for the Rams and the Dome simply does not meet the policy's definition of an "insured contract". See Pace Const. Co. v. U.S. Fidelity and Guar. Ins. Co., 934 F.2d 177, 179-80 (8th Cir. 1991). By obtaining insurance coverage for the Rams and the Dome, Sportservice did not "assume the tort liability of another party".

The only other portion of the Concession License Agreement which could be an "insured contract" under defendant's policy is the indemnification clause, where Sportservice agreed to indemnify the Rams and the Dome from claims allegedly caused by

-13-

Sportservice's negligence or concession operations. As mentioned above, the liability under Count IX of the Kuehn petition is based on the negligence of the Rams and the Dome, and not on the concession operations or negligence of Sportservice. Therefore, the indemnification clause, whether it constitutes an "insured contract" or not, does not provide coverage under defendant's policy for the claims in Count IX of the Kuehn petition.

Plaintiffs' remaining claim is that the Rams and the Dome were insured under defendant's policy through four specific endorsements. The endorsements do not specify the Rams or the Dome by name, but are potentially applicable to any person or organization "where required by written contract". The first endorsement states:

> **WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability arising out of:**
>   **a. Their financial control of you; or**
> **b. Premises they own, maintain or control while you lease or occupy these premises.**

Without any further analysis or authority, plaintiffs simply claim that this endorsement "would include the Rams and the Dome as additional insureds." First, there is no indication that the Rams or the Dome exercise any financial control over Sportservice. Second, although the Dome does own, maintain or control the Edward Jones Dome,³ it is not clear to the Court that Sportservice

---

³It is also conceivable that the liability under Count IX of the Kuehn petition "arises out of" the Dome's ownership or control of the Edward Jones Dome. See State Farm Mut. Auto. Ins. Co. v. Flanary, 879 S.W.2d 720, 722-23 (Mo. App. S.D.

-14-

"occupies" those premises.  In determining whether Sportservice "occupies" the Edward Jones Dome, the Court must apply the ordinary meaning of the word, so long as it is consistent with the parties' intent.  See State ex rel. Toastmaster, Inc. v. Mummert, 857 S.W.2d 869, 872 (Mo. App. E.D. 1993).  Under its common definition, to "occupy" is "to take or hold possession or control of" or to "reside in as an owner or tenant".[4]  Neither of these describes Sportservice's relationship with the Edward Jones Dome. Sportservice simply has a license to sell concessions on the premises during public events.  Accordingly, the first endorsement is not applicable.

The second endorsement, entitled "Owners, Lessees or Contractors", states:

> **WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operation performed for that insured.**

Even if this endorsement applies to the Rams and the Dome, coverage is limited "to liability arising out of [Sportservice's] ongoing operation performed for [the Rams or the Dome]."  As explained above, any liability the Rams and the Dome faced under Count IX was as a result of their own negligence and did not originate from Sportservice's concession operations.  Therefore, the second endorsement fails to extend coverage to Count IX.

---

1994)(noting that the phrase "arising out of" is given a broad meaning under Missouri law).

[4]See Merriam-Webster Online (2008)(http://www.merriam-webster.com (January 15, 2008)).

The third endorsement applies only when the liability arises out of "the ownership, maintenance or use of that part of the premises leased to [Sportservice]." The Edward Jones Dome was not leased to Sportservice. The Court has no reason to believe that this endorsement applies.[5]

The fourth endorsement extends coverage to:

**Any person or organization to whom you become obligated to include as an additional insured under this policy, as a result of any contract or agreement you enter into which requires you to furnish insurance to that person or organization of the type provided by this policy, but only with respect to liability arising out of your operations or premises owned by or rented to you. However, the insurance provided will not exceed the lesser of:**
  1. **The coverage and/or limits of this policy, or**
  2. **The coverage and/or limits required by said contract or agreement.**

This endorsement again fails to provide coverage for the negligent conduct of the Rams and the Dome because it is applicable only to liability arising out of Sportservice's operations.

**IV. Conclusion**

The Court concludes that summary judgment in favor of defendant is appropriate. No genuine issue of material fact exists, and the record shows that defendant is entitled to judgment as a matter of law. Defendant's policy does not provide coverage for the negligence claims made against the Rams and the Dome in Count IX of the Kuehn petition. Therefore, defendant has no

---

[5]Indeed, plaintiffs fail to provide any basis for their contention that these endorsements actually do apply.

obligation to fund any part of the settlement at issue in this matter.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [#29] is **granted**.

**IT IS FURTHER ORDERED** that plaintiffs' motion for summary judgment [#32] is **denied**.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 6th day of August, 2008.